Document: Mona Chrisp

Case: UNC Chapel Hill (Jean Estrada)

Case Number: 846-2017-11197

Continue Case Number: 435-2017-00671

FEPA Charge Number: 18-CRD-0671

Department: Social Medicine

Incident:1

Complaint: In April 2016, I ask Jean about the new position that was coming open in our offices. I ask what qualification you must have for the grant position. She told me that I do not have the skills or the qualification. (My reply Mona Chrisp): I told her that's not what my heavenly father says he said that I can do all thing through Christ whom strengthen me. Upon that discussion, Yvette Thompson was there and heard every word that was said. (Witness: Yvette Thompson) Upon her responses; I felt INTIMDATED so I did not apply for the position.  if I was not told that I do not have the qualification or the skills for the position, I would have applied for the position. Jean Estrada was the hiring manager so I did not apply. This position had to be posted twice, the first round of candidate selection was made but she said there was some HR issue with the candidates. (Witness; Yvette Thompson- Temp)

Complaint: On April 19, 2016, we were cleaning up the offices to receive new book case and our Temp Yvette Thompson move the books from the top shelf, I ask her how she move those books on the top shelf she said she used a step latter (Jean Estrada white) reply she climb up there like a MONKEY, she thought that statement SHE Jean Estrada was laughing. Yvette Thompson is a Black AFRICAN AMERICAN, she did not laugh at the comment and neither did I. I don't think as a manager that should have not been said THAT WAS A RACIAL COMMENT AND I TOOK OFFENSE TO THAT STATEMENT AS A BLACK AFRICAN AMERICAN. My reply (Mona Chrisp) to that statement was she did NOT CLAIM ON THE BOOK CASES LIKE A MONKEY. (Witness: Mona Chrisp and Yvette Thompson-Temp)

UNC fail to comply with Civil Rights Title VII, I was subject to Racist, Retaliation and Harassment; I report these issues to several upper management, which nothing I seen happen. When hiring and promoting I feel that everyone should be treated equal and fair. I feel that I was not treated fair nor equal.

After making that Racial Slur Jean Estrada tried to hire two BLACK AFRICAN AMERICAN first and second interview candidate. BLACK AFRICAN AMERICAN by the name of Denetha White which she was not hire so the position had to be reposted. Second candidate was a BLACK AFRICAN AMERICAN by the name of Karen Stone which she turns down the position. After the second candidate turn the position down she hires (Mina Majcen) white that did not have the experience that was needed to qualify for this position. This young lady had to be trained for this position. I also would have needed some training. I've been working in this department for 1 year and had learned so much, but with a little training I could have done this job affectively. Mina Majcen stated on her application that she doesn't have no experience in

using UNC financial system. (Evidence: a copy of her application that was used to apply for the job this information was giving to me by the hiring manager Jean Estrada (White). Mina Majcen (White Female) started in Social Medicine on November 07,2017 had to be sent to several trainings. Infoporte, Budget training and other training. I have been trained in all these areas for over some years. These training I had before taking the position in Social Medicine. Upon Mina Macjen being hirer in the department she was giving approval authorizes and she did not have experience in using the financial system. I had several transactions that needed to be approved I had to ask Mina to approve and she ask me was I sure they were correct; I told her to the best of my ability. (Evidence her application)

On Oct 14,2016 (Jean Estrada Business Manager sent me a job for me to apply for that pertain to grants. If I did not qualify for our Grant Position which was in our department than why would she send me a job that pertains to grants. She sent me the job posting three weeks before (Mina Macjen White) started in our department. (Evidence copy of email)

On November 16,2016 I spoke with Jon Oberland about problems that I had with Jean Estrada, and he recommended that I talk with (Shelly Fritts HR) and Ombudsman. This was my first attempt to solve the problem, I also spoke with Jean Estrada on that same day.

On November 16, 2016, I spoke with Jean Estrada about my work flow and my work plan. I also brought to her attention about the Grants Position; I ask her do she remember me asking her about applying for the position and do she remember tell me that I don't have the skills or the qualification. Her response (Jean Estrada; White) she said that she doesn't remember saying that and I told her that I have a witness (Yvette Thompson; Black) heard her every word. I also let her know that, that was very degrading and as a manager I thought a manager is supposed to up lift their employee up not tear you down. She apologizes if she said that, but she doesn't remember. She also stated that if she says something like this again please bring to her attention. Upon me bring up the fact that she told me that I don't qualify for the Grant Position, she put on my work plan that we can train in this area. I was never giving that oppounity before now until Mina Majcen(White) was hired and I brought this to her attention about the position.

On November 22, 2016, Mina and I had a meeting with Jean about Stuart RPPR grant and we discussed his new budget and how the paper work needs to be process. After the discussion, (Jean Estrada; White) ask Mina if she wants to do the paperwork and (Mina Majcen; White) said no, I told (Jean Estrada; White) that I would like to try and do the paperwork, but I was never giving the opportunity to try the paper work. Upon that discussion, Mina made a statement that none of this makes any since to her, (Jean Estrada; White) comment was but eventually it will make since correct).

On December 06, 2016, I had a second meeting with Jon Oberlander about other concern the same concern with different issue.

On January 06,2017 Mina Majcen, stated that she did not know how to us Info port and I set with her to show her some of the ways that can help her understand how to use the system. This system is used where reports and budgets can be found.

She sent me a job in email back in October 2016 for me to apply for that pertain to Grants. She sent me three jobs in email back in January 2017 one she though that I should apply for, pertaining to Grants. She printed me six jobs when we met on February 01, 2017. But however, I do not qualify for our Grant position. (Evidence) Copies of emails from Jean Estrada

On January 19, 2017, I met with Derek Hoar(White) Employee Relation and Shelly Frits (White) HR representative to discuss the concern that took place in Social Medicine upon our discussion I let Mr. Hoar know how stressful it was working in Social Medicine and his comment was maybe I need to find me somewhere else to work. My comment to him was that he was justify what she does is ok. I felt that statement was inappropriate and I fell that they were not going to help me in resolving this matter, so I decided to take the matter to the federal EEOC.

On February 01,2017, I had my first meeting with Jean Estrada about my career path and what area I want to go in. I told her that I don't know but I know that my strong point is finance. She had also printed out six jobs for me to look over and maybe apply for. I don't know her reason for her needing to print me six job application, but it makes me wonder. If I don't qualify for the Grants Position in the department how do I qualify for these positions. Copies of emails from Jean Estrada.

Its four employees that under her supervision, but 3 of us must meet with her two Blacks and one Asian we must meet once a month. The two other employees have been meeting with her when they first started, I just started meet with her on February 2017. I email her on what will these meeting will be pertaining to she said she wants to meet with her direct reports. We have one other employee that is White she doesn't have to meet with her (Kathy Crosier). Kathy Crosier works for the Director of the department but she still must report to her for her annual review she still is her direct report.

On February 16, 2017; Jean Estrada put a registration form in my inbox for her to attend a Society of Research Administration International conference. I ask her for her PID to do her registration in the Web Travel system and I ask her what this training for and she was telling me some details. Upon me asking her I told her that I might wanted to attended the training she ignored me so I stated that I might wanted to attended again she still ignored me. I spoke with my director (Jon Oberlaner) and he told me to send it in email and he will let her know that it is a good idea that I attended the training. After I came back from speaking with the( Director Jon Oberlander) I had an email about the training. I was never asked to attend the training. She also stated that she and Mina Majcen will be attending this training.

We also had a meeting at 10:00 today that we were prepared for a Staff meeting and Mina Majcen stated that she only been here for three month and has learned so much.

While we were having, our staff meeting some of the people in the department wanted to know why I was not able to approve web travel and she stated that I cannot be an approval and the processor. I ask her in the meeting don't you have approval authority and a processor, she stated yes. I was finally grant access to approve web travel, because there were some complaints about not having an approval while she was out or if Mina was not in the office.

On February 20, 2017; I spoke with Jean Estrada Business Manager for the departments about the training that she (Jean Estrada and Mina Majcen) will be attending on March 17, 2017 that I was not ask

to attend. I let her know that I might not be attending that training I found another training that I might want to take. (Jean Estrada response) that's what I thought this training is not for you it's for people that have been doing this for a long period of time. I thought that was inappropriate and that just goes back to her telling me that I don't qualify for the Grant Manager position. In reviewing the training information this training was for all levels beginner and intermitted level. (Evidence email documents)

On March 15, 2017; I had a meeting with Jean Estrada (Business Manager) about my Career path and some other things that might take effect in the department. She also stated that she has been backing up Mina Macjen the Grant Manager on some of her work. She also stated that Mina Macjen was having problem on how to process NIH grants; one question on the application was do you have NIH processing experience Mina Macjen stated yes to that question. (Evidences) Copy of her application that was giving to me by (Jean Estrada Business Manager.)

On April 2017, I was due to sign my performance review upon me reading over the information (Jean Estrada), put a statement in my review that I would like to have removed. She stated that I help to select the candidates for the Grants Position, but I never made any selection in any of the interviews. Upon speaking with her she made a statement that you do know that she was not our first selection (Mina Macjen) she stated you do remember Dee White which was in the first stage of interviews. I think that was very inappropriate and it made me feel uncomfortable. I've spoken with Jon Oberlander on June 19, 2017 about this matter to let him know that was inappropriate, he stated that I would need to talk with HR because there is nothing he can do about it.

In May 2017, I was making binder for the new fiscal year and Jean Estrada made a comment are you have fun making those binder and I told her no, she started laughing. Making these binders are very time consuming and it can take all day sometimes. Mina Macjen binder was made by the temp Jamie Ede. The previous year my binder was made by Jamie Ede the temp. I had to put some of my work on hold so that I could work on the binder because we were coming close to the end of the fiscal year and I would need these new binders for the 2017-2018 work. I spoke Jean Estrada about my binder being made and she said that she was going to have Jamie Ede the temp to help me. Jamie Ede never ask me do I need help with my binder. As (Jean Estrada) being the manager, she could have had Jamie Ede to make my binder. On numerous accusation she kept asking me did Jamie help you with those binder I said no, I told her I will get them done as soon as I can.

**NEW INFORMATION:**

**On June 21, 2017, I had my monthly meeting to go over any concern that I have. We talk about my workload and I stated that she took away reconciling grants, but she gives me CBM, which is a reporting system that we use for electronic charges. Jean Estrada suggest that she train Mina on voucher and CBM charges that pertain to grants. However, we never discuss Mina taking over Journal Entry. In our meeting Jean Estrada suggest that Mina be trained on Voucher and CBM. Jean Estrada never discuss anything about Mina Macjen taking over Journal Entry.**

**We also discuss that Jamie will be helping me with my binder but has not done so. Jamie Ede the temporary worker in the offices has made all of (Mina) binder in April & May 2017; I was never giving**

that help, which the previous year Jamie the temp made the binder for the next fiscal year. I did not have time to make all my binder. Jean Estrada continues ask me have Jamie help me with my binder on numerous occasion. I told Jean no, but I will get to them as soon as I get time. I report this information also to HR. I felt that she made my work environment HOSTILE and STRESSFUL.

I have spoken with several higher authorities, Jon Oberlander (Director), Wayne Blair (Ombudsman), Shelly Fritts (HR Representative), Derek Hoar (Employee Relation)

Second Complaint/ Retaliation/ Harassment

On July 06 and 07,2017; upon my return from vacation I received and email on July 03,2017 from another department requesting a chart field that was needed from our account department to make a purchase for one of the PI that had giving approval for the purchase. Jean Estrada business manager was CC" d on this email as well which she has access to these chart field strings. When the new grants person was hirer we came to agree that if anyone needs a chart field on a grant they will talk with Mina and if they needed a chart field on the F&A I was to handle those accounts. Well this information that was needed was on a grant, (Jean Estrada) did not provide the account number and had them to wait until I came back from vacation. She replied to the email and told the young lady that I will be back in the offices on Thursday July 06, 2017. I spoke with Jean and ask why did the young lady had to wait until I come back in the office when she only wanted a chart field and was not ask for anyone to process the purchases, I also stated that this was a grant and Mina could have giving her the chart field, she stated that Mina don't know how to do that. I stated to Jean Estrada that you know how to give a Chartfield for this account. I told Jean Estrada Business Manager the young lady only wanted the chartfield this could have been handle without me being here. I also have copies of the email from Jean Estrada Business Manager about the duties and who does what. I feel that this young lady should not have to wait two days this could have been handle without me being in the office. On numerous occasion, I have done Mina Macjen work since she has been in the department. Jean Estrada or Mina Macjen could have given this young lady the chartfield while I was out of the offices instead Jean Estrada sent an email to the young lady to wait until I come back in the offices. And this account is handle by Mina, which gave the young lady the chartfield. Jean Estrada only handle my work because I reported her, and my doctor took me out of work on medical leave. If she was trying to help me she would have giving them the account number. This shows a pattern, after I reported her to HR and EEOC Jean Estrada process some of my work while I was out. (Evidence email)

On numerous occasion I had to have the PI to sign the invoices before I can process for payment. On numerous occasion I had to forward email back to Jean and Mina to have the PI to sign the invoices so that I can process for payment. In the email on November 2017 Jean stated that Mina will handle everything that I use to do for grants, I will still process the paper work for process. (Evidence email)


I also spoke with Jon Oberlander the Director of the department and let him know my concern about the situation, he asked do I want him to talk with her or do I want to talk with HR. I talk with HR and

she sent me back an email and told me I need to talk with the EEO on campus and they sent me the contact information. (Copy from HR)

August 28,2017 (Mina Macjen) started doing voucher and journal entry for grants, I told Jean that we never discuss Mina doing journal entry she stated that you do not do journal entry anyway. She looks at her notes and agree that we do not discuss journal entry. I discuss with (Jean Estrada)

that I do journal entry for Carolina Copy and any entry that needs to be corrected. However, I do not do journal entry for any salary that needs to be done or things dealing with the moving money for a budget. (Evidence copy of email)

On August 11, 2017, I sent an email to Jean and Jon about in shadowing a young lady in OSR which I got approval from an OSR manager to learn more about grant and how they are process. On August 14, 2017 Jean Estrada send me back an email and told me that she and Jon Oberlander (Director) needs to discuss. On August 18,2017 Jean Estrada email, me back some question that she and Jon had for me answer. After reading over the question in the email I sent Jean and Jon no worries about the training / shadowing. On August 21, 2017 Jon Oberlander (Director sent me back an email) Copy of email.

On September 08,2017, Jean sent Me and Mina and email to for workflow chart that she had created and how the offices will flow. This work flow chart was done after I reported her on July 2017 because I reported that Mina Macjen work was being pass to me. This shows a pattern after I reported her she comes up with a flow chart.

On September 20,2017, I met with Jean and she ask me how my work load and I was told her that it was slow and she stated to me isn't that what your wanted, I told her no. I feel like she was trying to coerce me to say yes, that what I wanted. Jean was the one that suggest that she would get Mina to help me. Mina also supposed to be trained on CBM transaction but Jean stated that Mina cannot do CBM charges because she has other things to do. Jean Estrada suggest that I would started doing voucher again back in October 2017. She also shows me how to do a budget report on grants. This situation has been so stressful for me with the back and forward.

In first part of October 2017 I requested a meeting with Jon and Jean; in the meeting I request again to train/ shadow at OSR and Jean nor Jon ask me any of the question that pertain to the first email. Jean suggest that I train with someone in the School of Medicine, I told her that I want to train in OSR because I have already been giving permission by the manager in OSR. Jon and Jean agree with me going over. I went over to train / shadow in OSR on October 16,2017 as a whole day. Jean sent me an email and told me to take notes and bring back a list a thing that was discuss. Please a copy of my performance review that Jean Estrada stated learn the grant process and find opportunities to utilized knowledge to learn grants. So, I was trying to find other hands on training that can help my career path. (Evidence copy of email document)

On October 19,2017 which was my birthday Jean Estrada Business Manager came in my office and close the door and song Happy Birthday. Upon her being in my offices I did not know why she needed

to close my door to tell me Happy Birthday. However, upon her in my offices I was reading my email and a job posting came in my email box pertaining to a grants position at OSR. She told me you know I hate to loses you but you should apply for that position and see if I get an interview and if I do not get the job at least I would know how the interview would go. I do not comment on her suggestion,

On October 26,2017 we were having our staff meeting and we had special guest (Shelly Fritts HR) and HR Benefits upon getting ready for the meeting there was handouts on the table. I was setting beside Shelly Fritts HR, I was getting ready to get my hand out and Jean Estrada Business Manager stated what if I make this out of an airplane and fly this over to you, my comment was please do not fly that over to me it might hit me in my face. She stated I do not know how to make an airplane anyway. No one in that meeting was treated that way. (Shelly Fritts HR) was sitting beside me when this happen.

On October 26,2017 we were interviewing for administration position in bioethics there was three candidate, (Danielle Kelly- White), which I was not invite to attend her interview, Erica Koiki- Black which I attended her interview, and (Brandy Elsenrath White) I do not attend her interview. Jean Estrada sent an email out for everything to give her feedback on the candidate. Jean Estrada ask me to give feedback on (Erica Koiki- Black), I told her I only ask her one question and she answer truthfully and from the interview she was a nice person. Jean Estrada sent me another email did I get the impression that she could do a good job and get along with faculty and/ admin staff. I sent her back an email that stated from the interview she is a nice person. I feel that Jean Estrada wanted me to say something bad about this young and I had already answer (Jeans Estrada) question. (Evidence email)

On December 14,2017, and talk about me doing CBM transaction, but we never discuss me creating voucher for this account. Piedmont Health is an account that is house in another department she suggests (Jean Estrada), that we process everything within our department. Rachel Quinto works for Giselle Corbie Smith she handles all of Giselle voucher and payment which this account is something that Rachel Quinto would handle. On January 17, 2018 Jean Estrada forward me an email to create a voucher for payment for Giselle, I created the voucher but I sent Jean an email to let her know that we only discuss me doing CBM for this account not voucher. I also sent her an email that Rachel can handle the next one. (Please see copy of email and voucher that was process.

On December 15,2017, I was going back to my office and as I was going back to my office Jean ask me to come in her office she ask me to close the door. She stated that you know I hate to lose you but I think this position would be great for you to apply, she stated as a manager she would not be doing her job if she does not help me with my career path. I look over the paper work that she prints for me. As I look at the salary I told Jean that this salary is less than what I am making, I told her that I would look it over. And I left out her offices. This makes me feeling like she is trying to get me out of the office, because on numerous occasion.  I feel like this is a form of Harassment. This position is paying less than what I make.  We never discuss Jean Estrada to find me jobs she only supposed to train me on grants. (Copy of job posting)

On January 05,2018, I had a meeting with Jon Obelander (Director) about Jean Estrada printing me a job to apply which pays less than I make. I ask can he please talk with Jean about printing me off jobs to apply for, I discuss with Jon that we do not have a working agree for her to find me a job, we only

agree for her to training me on grant. He said he will talk with her. (That's in my work plan for her to train me on grants not find me a job).

On Januarys 16, 2018, we were having our staff meeting and we had a new employee that started in the department so everyone was introducing there self and Jean Estrada Business Manager had left out of the room to get something out of her offices. After coming back from her office, I was introducing myself to the new staff member Brandy ELsenrath (Jean Estrada Business Manager) stated that I (Mona Chrisp) will get you straight, I told the new employee that I will not do that, that's not my job and Disbursement Services is the one that handle that information. Another employee came in the meeting late a temp by the name of (Jamie Ede White employee) that had to introduce herself and no comment was made about her by the Business Manager (Jean Estrada). I feel that the last two staff meeting we had (Jean Estrada Business Manager) has made a comment or treated me a certain way no one else in these meeting has never been treated this way. (Brandy Elsenrath Witness I would like to subpoena)

Since January 2018, Jamie Ede- White temp has been hired a permanent employee in Center for Health Equity Research, which this department is a part of Social Medicine. No previous UNC experiences.

Since January 2018, Danielle Kelly- White temp was a temp June 2017 has now been hired as a permanent employee in Social Medicine. No previous UNC experiences.

On December 13, 2017 Jean included me in on an email from OSR about coming over and meeting with the staff and to discuss grants. Which in my work plan I suppose to be trained on grant? On March 1,2018 Jean and Mina meet with OSR and I was never included in the email as to when they would be meeting. I was coming out of my offices and Jean, Mina, Karmen and Chester was coming out of the meeting. However, Jean and Mina walk pass me Chester Williams was walking toward the exit and he seen me and came to say hi and he stated that you came over to shadow Alicia for grant processing. He also stated what office do you work in and I told him that I work with Jean and Mina. I was never included in this meeting for grant processing which this is in my work plan I suppose to learn about grants. (Evidence email from Jean Estrada)

Jean Estrada supposed to train me on Grant but I only train with her on a Budget report and Mina has only train me once on a Subaward.

Jean Estrada, has shown a pattern, of RACIST, Harassment and Retaliation, every time I report her she tries to act like she has been helping me but she has been making my work environment HOSTILE and STRESSFUL. She continues to leave me out of meeting and she also continue printing me jobs one which pays me less than what I make.

On February 21, 2018 Jamie Ede, put a voucher in my box to be posted in the spread sheet which is on one of my account that I manager. So, I call Rachel Quinton and ask her about these funds, and she stated that Jean knows about this account but she will email her to let her know you do not know about these rufunds. Jean stated that she has not set up the spread sheet yet. Jean Estrada was notified of these funds since January 2018 and I was not made award of these funds. Rachel forward me the email that she receives from Jean Estrada. However, I normally set up the spread sheet when funds come in. (Please see email document) Please see previous email from Jean asking me to set up spread sheet for funds that normally comes in, she was withholding information that affects my work. It can affect my reconciliation for the month.

On March 20,2018, Jay Bland from NCOH sent me an email on what remdies was I seeking and I send him an attach document of the remedies on Friday March 22,2018. He reviews my remedies and told that he need to talk with me about the punitive damage, and he was going to call me at 12:00, but however I never receive a call from him. He sent an email and said that he was waiting on a response and when he hears something he will let me know. But I never receive anything from him. One of my remedies that I was seeking is to be move to another department under another manager. UNC do not comply with any for the remedies that I was seeking, I have several disabilities that has flare up due to the Stress. READING EEOC RULES you do not have to be fire from your job are demoted for retaliation/ Harassment to take place. He said he looks at three facts and I meet two of them. So, I feel my case was never giving a fair chance. In order for me to show a pattern I need to show all my documents and I need to subpoena the witness to court. They sent me a letter of Right to Sue. (Evidence copy of email) copy of email remedies seeking.

EEOC also sent me a stated that Jean Estrada stated that since this has happened she has been showing me favoritism. I feel no should have to file a complaint to be treated fair and equal should. (Evidence copy of document)

I was also out of the offices July 2017 for eight days due to the stress in my offices. (Please see notes on July 2017 that pertain to what happen) I had to use my vacation days and sick time in order for me to get paid. I had just come back in the offices from vacation and had to use more time due to the stress in the offices. On April 06,2018 due to the stress in my offices my medical conditions require me to go out of work on Medical Leave FMLA. I have been out of work for almost 12 weeks and will be going out on Short Term Disability after my FMLA expires. My FMLA expires June 28,2018.

UNC Chapel Hill fell to comply with any of my remedies and because of this I will I had to go out on FMLA follow by Short Term Disability, I cannot go back into the same office that has put my health at risk. (Evidence from my doctor.) copies of my paperwork.

I feel that my case should be filed in Federal Court due to the fact that all my evidence was not taking in consideration. I fell that Civil Right Laws was violate and UNC fail to comply with the law. I have several witnesses that I can subpoena to court as witnesses. UNC Chapel Hill also fail to make reasonable accommodation for a person with an ADA disability. I have other ADA Disability since July 2016 which is an ongoing disability that UNC Chapel Hill is aware of and has fail to make little

reasonable accommodation. I have evidence from UNC University Employee Occupational Health Clinic where I file my work injury. Please see ongoing attach ADA disability since July 2016. Please consider hearing my case in Federal Court.

Please forgive any typo error or anything that you do not understand, I also have a binder with copies of documents that can corroborate everything that has an email trail or copies of information that she has given me. The binder is too large for me to put in the mail, so I will wait until I hear from you to find out the best way to get this information to you. My contact information is 757-237-0206.

Thanks,

Malia Chrisp

Reason:

Mina Macjen (White) was hire On November 07,2016 for the Business Officer Position; I ask my manager Jean Estrada (White) about apply for the position and she told me that I don't have the qualification or the skills. Mina Macjen (White) doesn't have the skills for the job she must be trained and I would have needed some training as well. I feel that I was not giving a fair chance to apply for the position. Due to that state that was made by Jean Estrada(White) I didn't apply for the position because she was the hiring manager.

Yvette Thompson(Black) was hired as a(Temp) she worked in Social Medicine in the CHER Department for several months. Upon her time in the CHER Department she was the first person to show up in the offices but (Jean Estrada White) didn't allow her a key so she had to wait in the hall until someone in the department showed up sometimes it wasn't until 8:30am. Sometime I would see her setting in the hall way. It was times when I ask her to ask Jean Estrada(White) to let her in the office, but (Jean Estrada White) was not nice to Yvette Thompson(Black). Sometime our Administration Assistance would let her in her suite. Yvette Thompson(Black) was miss treated by (Jean Estrada Business Manager White). After Yvette Thompson, (Black) Temp services was ended in the CHER Department she was ask to work in the Administration Department in Social Medicine as a Temp. Upon her working in the Social Medicine Administration Department, she was told by Jean Estrada(White), that she climbed on a book case like a MONKEY. My response (Mona Chrisp) she didn't climb on that book case like a MONKEY. After Yvette Thompson (Black Afro American) resigning her position Jean Estrada (Business Manager White) hires another Temp by the name of Jamie Ede(White) which have been in our office for several months. Upon Jamie Ede (White) working in our offices she has been allow key to the offices and other important documents. Yvette Thompson (Black) was not allow keys. I think that raises some concern and some red flags. Yvette Thompson(Black) was not able to have keys to the offices and Jamie Ede(White) has keys and have access to other important documents. Upon Yvette Thompson (Black) working in the Social Medicine Administration Department she was told she claimed on a book cases like a MONKEY (RED FLAG). I think that no one should be label as an animal; no matter what your skin colors are; we are all people. THAT WAS A RACIAL COMMENT AND I TOOK OFFENSE TO THAT STATEMENT AS A BLACK AFRO AMERICAN.

# ADA Disability with very little Accommodation

On July 13,2016 upon working in my offices at the McNider Building at UNC Chapel Hill, I was in my offices when I started coughing, became hoarse, and was breathing hard due to the coughing. One of my co-worker came in my offices same the walls was wet and the floor became wet and she reported it to my manager, because she was having problems breathing due to her Asthma. My manger report this to Environmental Department. They came and review the area, they stated that there was condensation coming through the wall due to heating and air. My manger Jean Estrada and my Director Jonathan Oberlander and HR Shelly Fritts they recommended that we needed to file an injury report, which I did and they also recommended that we go to the University Employee Occupational Health Clinic in cases I needed to claim an ADA/ Workman Compensation. They also let us work from home for several days until they figure out what was going on in the building. After going to the Clinic and filing my claim and letting them know the symptoms that I was having and let them know about my possible Asthma. They recommend me to continue to see my Primary Care Physician. (Evidence: copy of document from UEOHC I went to my doctor for my Allery Testing and my Asthma test.) My doctor said that I have environment asthma, which now I have to carry an EpiPen and an Asthma Pump. (Have copy of my test). EHS also was trying to put Me and my coworker in a temporary office, one offices was on the third, the second office was on the first floor. When I enter the offices on the third floor by the elevator, the ceiling was linking, water was running down the pipes and water was on the floor, rust spots were by the pipes and black spots was on the wall. (Evidence: copy of a video of the room and picture of this office on the third floor, I also have copy of emails.) (I have copy of email from EHS). The second office was on the first floor when I enter that offices which was in the same building it had a very bad musty odor so I decided not to work in that offices as well.  In the email that we receive from EHS stated that they were going to find us a space to work but it would be later down the road. We still have problems in this building and we have one of our conference room 340 the ceiling has come down numerous of times. The last time the ceiling was linking in conference room 340 was in May 2017 that I am aware of, normally EHS let the room dry out with fans and buckets place under the ceiling to catch the water that was linking from the ceiling.  They also tried to make some reasonable accommodation by putting in dehumidifier, which they were supposed to empty which that never happen, Jon our Director had to dump them because they were fell of water.  They also put in Allegiant Filters in several offices. Since all this has happen in 2016, I had to see my doctor six times dues to my allergies and five times in 2017 which on two occasion I had to have Allergies Injection which I had to use vacation time are take no lunch or make up my time. I know that I was out several other times for my allergies and I self-medicated myself from home. They also had water problem on the first floor in McNider Building January 01,2018 where they had to call the After-Disaster Team to come on campus. My last episode was March 2018 where they were doing work on our floor and me and my co-worker was got sick, so she talks with our director so that we can work form home. This is an ongoing problem in this building.

University Employee Occupational Health Clinic
University of North Carolina at Chapel Hill
145 N. Medical Dr   CB # 1649
Chapel Hill, NC 27599-1649
PH 919-966-9119   FX 919-966-6337

## Return to Duty: Work-related injury

07/13/16   *ongoing*                    *Environmental problems*
_____           _____
Date of Injury                                    Type of injury

☑ He/she was seen at UEOHC on 07/27/16 for a work-related injury.

☐ He/she was written out of work by UEOHC on _____ due to a work-related injury.

☐ He/she is referred to his/her primary care provider for his/her medical complaint.

☐ He/she is **out of work until**_____

☐ He/she **should not return to work** until after he/she has been seen back at UEOHC.

☐ He/she **may return to work as follows:**

   ☐ Return to full duty **WITHOUT RESTRICTIONS** on _____

   ☐ Return to duty **WITH** the following **RESTRICTIONS** on _____
   PLEASE NOTE: 1) restrictions are to remain in effect until next clinic visit unless noted elsewhere.  2) restrictions may – or may not – represent work restrictions.
   medically indicated, and 3) depending upon job duties, activity restrictions may – or may not – represent work restrictions.

   ☐ Restrict lifting / pushing / pulling to ≥ _____ pounds
   ☐ No lifting from   ☐ floor   or   ☐ knee level
   ☐ No overhead movement/work
   ☐ No repetitive or prolonged flexion/extension of the ☐ neck ☐ lower back
   ☐ No lifting Right/Left arm ≥ _____ pounds
   ☐ No ladder work
   ☐ No prolonged sitting/standing
   ☐ No squatting, kneeling, or crawling
   ☑ OTHER: *To continue to be seen by her PCP for evaluation of allergies and asthma; She is to follow her PCP's work restrictions.*

*Recommend EHS evaluate /repair environmental issues; particularly considering multiple co-workers are also experiencing problems.*

☐ **I WILL CONTACT EMPLOYEE IN/ON** _____ **TO CHECK ON PROGRESS**

☐ **RETURN TO UEOHC** _____ days/weeks/months

☐ **RETURN TO UEOHC only if symptoms continue.**

☑ **REPORT TO** *her PCP* _____

_Suzanne Carey FNP-C_
James Hill, MD   Cindy Gamble, RN   Pam Milner, RN        Date   07/27/16

North Carolina Industrial Commission

| Emp. code | | Fund | | Dept. |
|---|---|---|---|---|

**RECEIVED** JUL 2 7 2016

IC File # _____
*Emp. Code # 0006020
Carrier Code # Self

# EMPLOYER'S REPORT OF EMPLOYEE'S INJURY OR OCCUPATIONAL DISEASE TO THE INDUSTRIAL COMMISSION

Employer FEIN _____

Carrier File # _____

*Required Information.

**To the Employer:**
A copy of this Form 19 accompanied by a blank Form 18 must be given to the employee. It does not satisfy the employee's obligation to file a claim. **The filing of this report is required by law.** This form MUST be transmitted to the Industrial Commission through your Insurance Carrier.

*The I.C. File # is the unique identifier for this injury. It will be provided by return letter and is to be referenced in all future correspondence.

**To the Employee:**
This Form 19 is not your claim for workers' compensation benefits. To make a claim, you must complete and sign the enclosed **Form 18** and mail it to Claims Administration, N.C. Industrial Commission, 4335 Mail Service Center, Raleigh, NC 27699-4334 within two years of the date of your injury or last payment of medical compensation. For occupational diseases, the claim must be filed within two years of the date of disability or the date your doctor told you that you have a work-related disease, whichever is later.

7203-90526

**The use of this form is required under the provisions of the Workers' Compensation Act**

Employee's Name: Malia S. Chrisp
Address: 2906 Crestwood CT.
City: Burlington State: NC Zip: 27215
Home Telephone: 757 237-0200
Work Telephone: 919 543-8223
Social Security Number: ____ Sex: ☐ M ☑ F Date of Birth: ____

Employer's Name: University of North Carolina at Chapel Hill (919) 962-5507
Employer's Address: 1120 Estes Drive Extension CB: 1650 Chapel Hill NC 27599
Telephone Number
City State Zip
Insurance Carrier: Self Policy Number: ____
Carrier's Address: City State Zip
( )
Carrier's Telephone Number: ( ) Fax Number: ( )

| **Employer** | 1. | Give nature of employer's business | Incident At Work (EHS) |
|---|---|---|---|

**Time And Place**

2. Location of plant where injury occurred: Mc Nider Build
County ____ Department: Mc Nider Building ☐ State if employer's premises
3. Date of injury 7/13/2016. Day of week ____ Hour of day 9:00 ☑ A.M. ☐ P.M.
5. Was employee paid for entire day ____ 6. Date disability began / / ____ ☐ A.M. ☐ P.M.
7. Date you or the supervisor first knew of injury 7/13/2016 8. Name of supervisor: Jean Estrada

**Person Injured**

9. Occupation when injured: Accounting
10. (a) Time employed by you ____ (b) Wages per hour $ ____
11. (a) No. hours worked per day ____ (b) Wages per day $ ____ (c) No. of days worked per week ____
(d) Avg. weekly wages w/ overtime $ ____ (e) If board, lodging, fuel or other advantages were furnished in addition to wages, estimated value per day, week or month. $ ____ per ____

**Cause And Nature Of Injury**

12. Describe fully how injury occurred and what employee was doing when injured: I was working in my office (Condensation on wall and floor)

(Statement made without prejudice and without vouching for correctness of information)

13. List all injuries and specify body part involved (e.g. right hand or left hand): throat, coughing, breathing, ears, possible Asthma, hoarseness
14. Date & hour returned to work / / at : ____ .M. 15. If so, at what wages $ ____ per ____
16. At what occupation ____ 17. Employee's salary continued in full? ____
18. Was employee treated by a physician ____

| **Fatal Cases** | 19. | Has injured employee died ____ 20. If so, give date of death (Submit Form 29) / / |
|---|---|---|

Date Completed / /

Employer name ____
Signed by ____ Official Title ____

**OSHA 301 Information:**
Case Number from Log: ____ Date Hired: / / Time Employee began work on date of incident: : ☐ A.M. ☐ P.M.
Name of facility: ____ Address: Street/City/Zip/Telephone ____

If off-site medical treatment provided, answer entire next line.
ER visit? ☐ Yes ☐ No Overnight stay? ☐ Yes ☐ No

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

FORM 19
8/1/08
PAGE 1 OF 2

| FOR IC USE ONLY |
|---|
| RESEARCHER: ____ |
| CC: ____ |
| EC: ____ |
| DATA ENTRY: ____ |

FORM 19

SELF-INSURED EMPLOYER OR CARRIER MAIL TO:
NCIC - CLAIMS ADMINISTRATION
4335 MAIL SERVICE CENTER
RALEIGH, NORTH CAROLINA 27699-4334
MAIN TELEPHONE: (919) 807-2500
HELPLINE: (800) 688-8349
WEBSITE: HTTP://WWW.COMP.STATE.NC.US/

## IMPORTANT INFORMATION FOR EMPLOYER

Employer must furnish a copy of this form, as completed, to the employee or the employee's representative when submitted to the Insurance Carrier or Claims Administrator for transmission to the Commission. Every question must be answered. This Form 19 must be transmitted to the Commission through your insurance carrier/claims administrator, and is required by law to be filed within 5 days after knowledge of accident. Employer must also give employee a blank Form 18.

## IMPORTANT INFORMATION FOR EMPLOYEE

### Reporting an Injury

If you do not agree with the description or time of the accident given on this form, you should make a written report of injury to the employer within thirty (30) days of the injury.

### Making A Claim

To be sure you have filed a claim, complete a Form 18, Notice of Accident, within two years of the date of the injury and send a copy to the Industrial Commission and to your employer. The employer is required by law to file this Form 19, but the filing of the Form 19 does not satisfy the employee's obligation to file a claim. The employee must file a Form 18 even though the employer may be paying compensation without an agreement, or the Commission may have opened a file on this claim. A claim may also be made by a letter describing the date and nature of the injury or occupational disease. This letter must be signed and sent to the Industrial Commission and to your employer.

**FOR ASSISTANCE OR TO OBTAIN A FORM 18 FROM THE INDUSTRIAL COMMISSION, YOU MAY CALL (800) 688-8349**

USE YOUR I.C. FILE NUMBER (IF KNOWN) OR SOCIAL SECURITY NUMBER ON
ALL FUTURE CORRESPONDENCE WITH THE COMMISSION

[SPANISH TRANSLATION]

## INFORMACIÓN IMPORTANTE PARA LOS EMPLEADOS

### Reporte de una Lesión (Reporting an Injury)

Si usted no está de acuerdo con la descripción o la hora del accidente que aparece en el formulario, debe hacer un reporte de la lesión por escrito y dárselo a su empleador dentro de un período de treinta (30) días a partir de la fecha de la lesión.

### Cómo Presentar una Reclamación (Making a Claim)

Para ceriorarse de que ha presentado una reclamación, complete el Formulario 18 Notificación de Accidente dentro de un período de dos años a partir de la fecha de la lesión y envíe una copia a la Comisión Industrial y una copia a su empleador. Por ley, el empleador debe presentar el Formulario 19, sin embargo, el presentar el Formulario 19 no cumple con la obligación que tiene el empleado de presentar una reclamación. El empleado debe presentar el Formulario 18 aunque el empleador esté pagando compensación sin tener un acuerdo o si la Comisión ha creado un expediente con respecto a esta reclamación. También se puede presentar una reclamación por medio de una carta explicando la fecha y la naturaleza de la lesión o la enfermedad ocupacional. Esta carta se debe firmar y enviar a la Comisión Industrial así como al empleador.

**PARA RECIBIR ASISTENCIA O PARA OBTENER EL FORMULARIO 18 DE LA COMISIÓN INDUSTRIAL, USTED PUEDE HABLAR AL (800) 688-8349**

EN TODA LA CORRESPONDENCIA QUE ENVÍE A LA COMISIÓN INDUSTRIAL POR FAVOR ESCRIBA
EL NÚMERO DE CASO DESIGNADO POR LA COMISIÓN (SI LO SABE)
O SU NÚMERO DE SEGURO SOCIAL.

| Employee Signature: | Mary | Date: 7 / 28 / 2016 |
|---|---|---|

Form 19
8/1/08
Page 2 of 2

# FORM 19

SELF-INSURED EMPLOYER OR CARRIER MAIL TO:
NCIC - CLAIMS ADMINISTRATION
4335 MAIL SERVICE CENTER
RALEIGH, NORTH CAROLINA 27699-4334
MAIN TELEPHONE: (919) 807-2500
HELPLINE: (800) 688-8349
WEBSITE: HTTP://WWW.COMP.STATE.NC.US/

APPENDIX A

## EMPLOYEE'S ACCIDENT REPORT FORM
## UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL

THIS FORM IS TO BE COMPLETED BY THE EMPLOYEE AND FORWARDED TO THE HEALTH AND SAFETY OFFICE AS SOON AS PRACTICABLE AFTER THE INJURY. (SEE HUMAN RESOURCES MANUAL)

ACCIDENT DATE

7/13-14/2016

1. NAME OF EMPLOYEE:

MAtiA S. Chrisp

2. DATE AND TIME OF INJURY:

7/13/2016

3. DESCRIBE HOW THE INJURY OCCURRED: Water from the condensation from the moisture on the floor and walls

4. DESCRIBE WHAT JOB DUTY YOU WERE DOING AT THE TIME OF YOUR INJURY:

In my office working (accounting)

5. DESCRIBE WHAT PART OF YOUR BODY WAS INJURED: throat, Coughing, breathing, ears ( possible Asthma) Hoarseness

6. DESCRIBE WHAT YOU WOULD RECOMMEND TO PREVENT A REOCCURRENCE:

January 1998

7. FURTHER INFORMATION YOU WOULD LIKE TO INCLUDE REGARDING YOUR INJURY:

_____          7/27/2016

EMPLOYEE SIGNATURE                                    DATE

UNC Health and Safety Office

## REQUEST FOR INDOOR AIR QUALITY INVESTIGATION

Building: _McNider_    Occupant Name: _Malia S. Chrisp_

Department: _Social Medicine_    Work Location: _348_    Phone #: _9_

Date: _7/27/2016_    757-

231-0206

**SYMPTOM PATTERNS**

What kind of symptoms or discomfort are you experiencing? _Breathing, Coughing, throat,_
_ears, hoarness_

Are you aware of other people with similar symptoms or concerns?  ☑ yes  ☐ no

If so what are their names and locations? _____

_____

Do you have any health problems that may make you particularly susceptible to environmental problems?

☐ contact lenses    ☐ chronic cardiovascular disease    ☐ undergoing chemotherapy or radiation therapy

☑ allergies    ☐ chronic respiratory disease    ☐ immune system suppressed by disease or other causes

☐ chronic neurological disease

**TIMING PATTERNS**

When did your symptoms start? _7/13/2016_

When are they generally worst?

_When I'm at work_

Do they go away? If so, when?

_The hoarseness goes away, but not the pain in my_
_throat, ears and the Coughing_

Have you noticed any other events (such as weather events, temperature or humidity changes, or activities in the building) that tend to occur around the same time as your symptoms? _yes_

## SPACIAL PATTERNS

Where are you when you experience symptoms or discomfort?

At work, McNider Building (348 suite)

Where do you spend most of your time in the building?   From 7:40 until 4:15

## ADDITIONAL INFORMATION

Do you have any observations about building conditions that might need attention or might help explain your symptoms (e.g., temperature, humidity, drafts, stagnant air, odors, recent painting, new carpet or furnishings)?

Has there been recent remodeling or changes in your home environment (e.g., painting, new carpet and/or furniture)? Please explain.   NO

Have you sought medical attention for your symptoms?   Yes

Do you have other comments?   NO

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To:    Malia S. Chrisp
2906 Crestwood Court
Burlington, NC 27215

From:    Charlotte District Office
129 W. Trade Street
Suite 400
Charlotte, NC 28202

| | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 435-2017-00671 | Renee E. Grube, State & Local Program Manager | (704) 954-6446 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

- [ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

- [X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

- [ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Reuben Daniels*            May 15, 2018

**Reuben Daniels, Jr.,**
**Director**    *(Date Mailed)*

Enclosures(s)

cc:

Mary Crosby
Assistant University Counsel
UNIVERSITY OF NORTH CAROLINA AT CHAPEL
HILL
110 Bynum Hall, Campus Box CB 9105
Chapel Hill, NC 27514

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 18-CRD-0671 |
| ☒ EEOC | 435-2017-00671 |

NC Office Of Administrative Hearings                    and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mrs. Malia S. Chrisp** | **(336) 228-1675** | **1965** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2906 Crestwood Ct, Burlington, NC 27215** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **UNC CHAPEL HILL (CB #9160)** | **500 or More** | **(919) 445-3576** |

| Street Address | City, State and ZIP Code |
|---|---|
| **137 East Franklin St; Suite 404,  Campus Box 9160,  Chapel Hill, NC 27599** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☒ OTHER *(Specify)*   **NCGS 7A-759 (b1)**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **07-06-2017**   Latest **07-06-2017**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

## AMENDED CHARGE TO INCLUDE STATE STATUTES

I believe that I am, and continue to be discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended; and pursuant to Chapter 7A-759 (b1) of the North Carolina General Statutes.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| _____   _____ Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |